IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| SHENZHEN TANGE LI'AN E-COMMERCE, CO., LTD. and ITOMTE, INC., | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | 1:20-CV-738-RP |
| DRONE WHIRL LLC *d/b/a* 7PRODUCTGROUP and TATIANA MIRONOVA, | § § § § § § | |
| Defendants. | § | |

**ORDER**

Before the Court is Plaintiff Shenzhen Tange Li'An E-Commerce Co., Ltd. ("Shenzhen") and ITOMTE, Inc.'s ("ITOMTE"; together "Plaintiffs") motion for a preliminary injunction, (Dkt. 4), and all responsive briefing. (Resp., Dkt. 11; Reply, Dkt. 16). On August 11, 2020, the Court held a full evidentiary hearing on Plaintiffs' motion. (Prelim. Inj. Hr'g, Dkt. 27). Having considered the motion, the evidence and argument presented at the hearing, and the relevant law, this Court will deny Plaintiffs' request for a preliminary injunction.

**I. BACKGROUND**

This case is about an ornamental gnome patent. Shenzhen is a Chinese company that designs and manufactures gnome-like characters of Swedish lore, locally known as "tomtes." (Mot. Prelim. Inj., Dkt. 4, at 3). ITOMTE distributes Shenzhen's toys, including its stuffed tomte toys, throughout the United States. (*Id.*).

Plaintiffs allege that a Shenzhen designer "conceived an original design" for a stuffed tomte toy (the "Tomte Toy") in January 2016. (*Id.*). Shenzhen began production of the Tomte Toy in July 2016 and posted its first Amazon Marketplace listing two months later. (*Id.*). Over the years,

Shenzhen has derived a majority of its revenue from its Tomte Toy sales on Amazon's platform. (Luo Decl., Dkt. 4-1, at 7). Plaintiffs do their strongest business during the holiday season. (*Id.*). At the preliminary injunction hearing, Yifeng Luo ("Luo"), owner of Shenzhen and general manager of ITOMTE, testified that Shenzhen generated $1,127,402 in revenue from Tomte Toy sales during the 2018 holiday quarter alone. (Prelim. Inj., Hr'g., Dkt. 27).

Defendant Tatiana Mironova ("Mironova") contacted Shenzhen about purchasing and distributing the Tomte Toy in November 2016. (*Id.* at 3; *see also* Amazon Inquiry, Dkt. 4-1, at 21). Mironova contends she became interested in selling the gnomes after writing a children's book about "a Nordic gnome that saves a boy's dog." (Mironova Decl., Dkt. 4-2, at 3). She hoped to include a stuffed gnome toy with her children's book and Plaintiffs' gnomes "were similar to the design [she] had envisioned when creating [her] book character." (*Id.*). She ordered one of Plaintiffs' gnomes from Amazon as a "test product" and later struck an agreement with Luo,[1] which allowed her to buy Tomte Toys from Shenzhen on Amazon at a discounted price and resell them. (*Id.*). By year's end, Mironova had placed "at least thirteen orders for the Tomte Toy."[2] (Mot. Prelim. Inj., Dkt. 4, at 3).

Luo soon discovered that Mironova was "selling products resembling the Tomte Toy" on Amazon. (*Id.* at 4; Luo Decl., Dkt. 4-1, at 4). When Luo contacted Mironova about these gnome toys, she admitted to manufacturing them with another vendor. (Mot. Prelim. Inj., Dkt. 4, at 4; *see also* WeChat Conversation, Dkt. 4-1, at 40 ("I manufacture it. I told you that your prices are too high. I had to go with another vendor.")). During this same conversation, Mironova informed Luo that she had applied for a design patent, U.S. Design Patent Application No. 29/597,404 (the " '404 application"), claiming the Tomte Toy design. (Compl., Dkt. 1, at 6; WeChat Conversation, Dkt. 4-1,

---

[1] Luo communicated with Mironova over WeChat message using the name Ivan, an English transliteration of his Chinese name. (Luo Decl., Dkt. 4-1, at 3).
[2] Shenzhen alleges Mironova's initial purchase was for 400 Tomte Toys. (Luo Decl., Dkt. 4-1, at 4).

at 41–44). According to Plaintiffs, the '404 application "claims the identical ornamental design of the Tomte Toy that Mironova purchased from Shenzhen." (Compl., Dkt. 1, at 5). Plaintiffs further assert that Shenzhen never "assign[ed], license[d], transfer[ed], or otherwise grant[ed] Mironova any ownership or other interest" in the Tomte Toy design. (*Id.* at 6).

In response, Luo filed his own design patent application for the Tomte Toy, U.S. Design Patent Application No. 29/600,529 (the " '529 application). (Luo Decl., Dkt. 4-1, at 5). Plaintiffs then delivered a letter to Mironova demanding that she cease selling her gnome toys and using the ITOME mark. (Compl., Dkt. 1, at 6). On December 15, 2017, Plaintiffs filed a complaint for trademark infringement, copyright infringement, and unfair trade practices in the Eastern District of New York against Mironova and her company, 7ProductGroup. *See Shenzhen Tange Li'An E-Commerce Co., Ltd. et al v. Drone Whirl LLC et al.*, No. 2:17-cv-07320-ADS-SIL (E.D.N.Y. filed Dec. 15, 2017) (Compl., Dkt. 1). They also moved for a TRO and preliminary injunction. *Id.* (E.D.N.Y. filed Dec. 15, 2017) (Mot. TRO, Dkt. 3). Plaintiffs voluntarily dismissed their lawsuit on January 25, 2018. (Compl., Dkt. 1, at 7).

On June 5, 2018, the U.S. Patent and Trademark Office ("USPTO") issued Mironova a design patent for the Tomte Toy design, U.S. Patent No. D819,756 (the " '756 patent"). (Mot. Prelim. Inj., Dkt. 4, at 4; *see also* '756 Patent, Dkt. 4-3). Plaintiffs contend the patent is invalid because a Shenzhen designer invented the Tomte Toy design and first showed it to the public in early September 2016. (Luo Decl., Dkt. 4-1, at 5). But USPTO rejected Shenzhen's own design patent application because the '756 patent named Mironova as the inventor of the Tomte Toy design. (*See* Luo Decl., Dkt. 4-1, at 5; *see also* 35 U.S.C. § 102(a)(2) ("A person shall be entitled to a patent unless . . . the claimed invention was described in a patent [that] names another inventor and was effectively filed before the effective filing date of the claimed invention.")).

Shenzhen then instituted a derivation proceeding before the Patent Trial and Appeal Board ("PTAB"), alleging that Shenzhen, not Mironova, was the original inventor of the claimed Tomte Toy design. (Compl., Dkt. 1, at 7). Shenzhen asked the PTAB to "amend the inventorship of the '756 patent accordingly or grant a new patent to Shenzhen." (*Id.*). Shenzhen's petition remains pending before the PTAB. (*Id.*).

On October 4, 2019, Amazon notified Shenzhen that it had removed several of Shenzhen's Tomte Toy products from its website in response to a patent infringement complaint from Mironova. (Mot. Prelim. Inj., Dkt. 4, at 5; Amazon Notice, Dkt. 4-1, at 48).

On November 14, 2019, Mironova sent a retraction letter to Amazon and asked it to reinstate Plaintiffs' listings. (Retraction Letters, Dkt. 26-1, at 1). She followed up again on November 18, 2019, and more specifically asked Amazon for "a reinstatement of [the] ITOMTE Inc. seller account" because she had given Plaintiffs a temporary license to sell the products claimed in the '756 patent. (*Id.* at 2). Despite these efforts, Shenzhen's Tomte Toys remain delisted. (*Id.*).

On July 9, 2020, nearly nine months after Amazon delisted Shenzhen's Tomte Toys, Plaintiffs filed their complaint in this case, asking the Court to declare the '756 patent invalid and unenforceable.[3] (Compl., Dkt. 1, at 9–11). That same day, Plaintiffs filed a motion for a TRO and preliminary injunction to prevent the "ongoing and immediate harm to Plaintiffs' sales, business relationships, and reputation." (Mot. TRO, Dkt. 4, at 2). Plaintiffs asked the Court to order Defendants to retract all notices and complaints made to Amazon alleging intellectual property infringement, enjoin Defendants from filing future intellectual property complaints based on the '756 patent, and to order Amazon to reinstate Plaintiffs' store and the affected Tomte Toys. (*Id.* at 2).

---

[3] Plaintiffs also bring state-law claims for unfair competition and tortious interference with existing business relationships. (Compl., Dkt. 1, at 9–11).

The Court denied Plaintiffs' motion for a TRO for two reasons. First, Plaintiffs provided no evidence that their business reputation or revenue would be irreparably harmed before the Court could hold a hearing and provide Defendants an opportunity to respond. (Order, Dkt. 7, at 5). Second, the Court concluded that Plaintiffs' nearly 9-month delay in filing their motion suggested a lack of urgency that counseled against emergency ex parte relief. (*Id.* at 6). After concluding that Plaintiffs had not met their burden on irreparable harm, the Court did not reach the remaining TRO factors. (*See id.*).

Plaintiffs then served Defendants. Defendants filed a response in opposition, (Resp., Dkt. 11), Plaintiffs filed a reply, (Reply, Dkt. 16), and the Court held a hearing on Plaintiffs' motion for a preliminary injunction on August 11, 2020.[4] For the reasons discussed below, the Court finds that Plaintiffs have not carried their burden on irreparable harm and will deny Plaintiffs' motion.

## II. ANALYSIS

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is to be treated as the exception rather than the rule. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050 (5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). A movant cannot be granted a preliminary injunction unless it can establish that it will suffer

---

[4] The Court originally set the hearing for July 24, 2020, but Plaintiffs filed an opposed motion for a continuance the day before the scheduled hearing to afford them more time to find an interpreter for Luo and to ensure he had reliable access to Zoom. (Mot. Dkt. 14, at 1). The Court granted the motion and reset this for a preliminary injunction hearing over Zoom on August 11, 2020. (Order, Dkt. 22).

irreparable harm without an injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350 (Fed. Cir. 2001). In applying this framework, the Court's analysis, as before, begins and ends with irreparable harm.

### A. Irreparable Harm

In their motion for a preliminary injunction, Plaintiffs contend Defendants' continued misuse of the '756 patent will irreparably harm Shenzhen's business reputation and sales revenue. (Mot. Prelim. Inj., Dkt. 4, at 9–10). After Amazon delisted Shenzhen's Tomte Toys in response to Defendants' patent and copyright infringement allegations, Plaintiffs could no longer use Amazon's platform to reach their customer base. (*Id.*). Without the ability to sell their products on Amazon, Plaintiffs contend they will lose their "prominent product placement and high rankings in organic search results," which they have earned through their reputation for high-quality products, reliable customer service, positive reviews, and quick response times. (*Id.*). According to Plaintiffs, continued suspension will impact "all of these goodwill factors" and "may [also] result in staff layoffs or even insolvency." (*Id.* at 10).

At the TRO stage, the Court concluded that the absence of evidence indicating that Plaintiffs would suffer immediate irreparable injury before Defendants could be heard in opposition, coupled with their delay in filing this lawsuit, counseled against a finding of irreparable harm. (Order, Dkt. 7, at 6). Plaintiffs attempted to address these deficiencies at the hearing and in their reply brief.

At the hearing, Luo testified about many of the same alleged harms the Court previously considered in evaluating Plaintiffs' request for a TRO. (Prelim. Inj. Hr'g., Dkt. 27). For instance, he explained that the inability to sell the Tomte Toy on Amazon has resulted in lost sales, an overload of Tomte Toy inventory, lost collaboration opportunities, less prominent placement in Amazon search results, staff layoffs, and reputational damage. (*Id.*). He also reiterated the importance of the

upcoming holiday quarter, contending that if Plaintiffs could not sell the Tomte Toy through its
Amazon store over the holidays, Plaintiffs may become insolvent. (*Id.*). And while Luo conceded on
cross examination that Plaintiffs have opened a new Amazon store and have been selling new
gnome designs, he explained that those gnome designs have produced less revenue than the delisted
Tomte Toy. (*Id.*; *see also* ITOMTE Gnomes, Dkt. 29-1, at 1–3).

      With respect to Plaintiffs' delay in filing this lawsuit, Luo testified that he initially hoped to
resolve this dispute through a derivation proceeding with the PTAB, which he initiated on May 29,
2019. (Reply, Dkt. 16, at 3). According to Luo, Plaintiffs "anticipated a swift decision by the PTAB
that would obviate the need for the expense of litigation," and accordingly made the business
decision to await the results of the PTAB proceeding rather than pursue litigation. (*Id.* at 4; Prelim.
Inj. Hr'g., Dkt. 27). After Amazon notified Plaintiffs on October 4, 2019, that Amazon had delisted
its Tomte Toy, Plaintiffs again decided that waiting for a "forthcoming" PTAB decision remained
the most efficient and cost-effective approach to resolving this dispute. (Prelim. Inj. H'rg., Dkt. 27).
When the PTAB had still not issued its decision nine months later, Plaintiffs opted to file this
lawsuit and seek injunctive relief. (*Id.*).

      Meanwhile, Defendants argue that Plaintiffs' delay in bringing this lawsuit is fatal and
precludes a finding of irreparable injury. (Resp., Dkt. 11, at 3–4). And, even if the Court excused this
delay, Defendants maintain that the harms identified by Plaintiffs are neither irreparable nor likely to
occur in the absence of an injunction. (*Id.* at 4). For instance, Defendants contend that lost sales "are
the paradigmatic example of a harm that is *not* irreparable because it can be remedied by an award of
damages." (*Id.*). On this point, Defendants emphasize that Luo could recall, to the dollar, the
revenue Shenzhen had generated during the 2018 holiday quarter: $1,127,402. (Prelim. Inj. Hr'g.,
Dkt. 27). Defendants also argue that Plaintiffs have provided no evidence that their other asserted
harms are likely to occur in the absence of an injunction. (*Id.*; *see also* Resp., Dkt. 11, at 4).

The Court concludes that Plaintiffs' delay in bringing this lawsuit and the lack of evidence indicating that irreparable harm is likely remain insurmountable barriers to Plaintiffs' request for injunctive relief.

### B. Plaintiffs' Delay Precludes Injunctive Relief

Plaintiffs' delay in seeking injunctive relief suggests a lack of urgency that militates against a finding of irreparable injury. *See All Access Today, L.P. v. Aderra Inc.*, No. A-08-CA-498 LY, 2009 WL 10669445, at *4 (W.D. Tex. July 7, 2009) ("A significant delay, on its own, provides an independent reason for finding there is no irreparable injury."). Mironova informed Luo that she had applied for a design patent in 2017; yet, Plaintiffs waited until July 2020 to file this lawsuit. (WeChat Conversation, Dkt. 41, at 41–44; Compl., Dkt. 1). Luo contends that he did not seek injunctive relief in those intervening years because Mironova had not yet enforced the '756 patent against him. (Prelim. Inj. Hr'g., Dkt. 27). But Luo learned Mironova had filed infringement complaints with Amazon based on the '756 patent in October 2019, and Plaintiffs still waited nearly nine months before seeking injunctive relief in this Court. (*Id.*). This undue delay "negate[s] Plaintiffs' contention that the feared harm will truly be irreparable." *Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-444-RP, 2017 WL 5588190, at *3 (W.D. Tex. Nov. 20, 2017).

Nevertheless, Plaintiffs' contend their delay is reasonable because, from a business perspective, waiting for a forthcoming decision from the PTAB remained the most cost-effective and efficient approach to resolving this dispute. (Reply, Dkt. 16, at 3–4; Prelim. Inj. Hr'g., Dkt. 27). This argument is unavailing. Business decisions involve considering the risks and consequences of various courses of actions. Awaiting a decision from the PTAB and pursuing litigation to obtain injunction relief were never mutually exclusive options. So, while awaiting a decision from the PTAB may have had cost-saving benefits, that delay also carried legal consequences, specifically the risk that a substantial period of delay might later negate a finding of irreparable harm. That risk has now

materialized. The Court concludes that Plaintiffs' delay is fatal to their request for a preliminary injunction. *See Embarcadero*, 2017 WL 5588190, at *3 (W.D. Tex. Nov. 20, 2017); *see also Gonannies, Inc. v. Goupair.com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2006) (finding that a delay of over six months rebutted any presumption of irreparable harm).

### C. Irreparable Harm is Not Likely

Even if the Court excused Plaintiffs' delay, Plaintiffs would still not be entitled to a preliminary injunction because they have not met their burden to show that irreparable injury is not merely possible, but likely. *See Winter*, 555 U.S. at 22. Before the Court may enter a preliminary injunction, the moving party must make "a clear showing that it is at risk of irreparable harm, which entails showing a likelihood of substantial and immediate irreparable injury." *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012). A "[s]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).

Plaintiffs allege a wide variety of harms, including lost sales, storage costs for excess inventory, reputational damage in the form of less prominent placement in Amazon search results, staff layoffs, and possible insolvency. (Mot. Prelim. Inj., Dkt. 4, at 9–10; *see also* Prelim. Inj. Hr'g. Dkt. 27). None of these allegations show that irreparable harm is imminent or reasonably certain to occur in the absence of an injunction.

First, in the Fifth Circuit, irreparable harm exists "where there is no adequate remedy at law, such as monetary damages." *Janvey*, 647 F.3d at 600; *see also DFW Metro Line Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990) ("There can be no irreparable injury where money damages would adequately compensate a plaintiff."). If Plaintiffs prevail on the merits, any lost sales could be easily quantified, a conclusion only bolstered by Luo's ready recollection of the $1,127,402 in revenue Plaintiffs generated during the 2018 holiday season. (Prelim. Inj. Hr'g., Dkt. 27). The same

goes for the cost of storage expenses for excess inventory. And Plaintiffs provided no evidence indicating that the absence of an injunction would impair the Court's ability to grant such a damages remedy.[5]

Second, "while reputational injury can be used to establish irreparable harm in certain circumstances, the showing of reputational harm must be concrete and corroborated, not merely speculative." *Pruvit Ventures, Inc. v. Forevergreen Int'l LLC*, No. 4:15-CV-571-ALM-CAN, 2015 WL 9876952, at *5 (E.D. Tex. Dec. 23, 2015), *report and recommendation adopted*, No. 4:15-CV-571, 2016 WL 231160 (E.D. Tex. Jan. 19, 2016); *see also Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013) ("[S]peculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."). Plaintiffs argue that they will suffer reputational damage through less prominent product placement in Amazon search results if the Tomte Toy remains delisted for another holiday season. (Prelim. Inj. Hr'g., Dkt. 27). But Plaintiffs continue to sell other gnomes under the ITOMTE mark and they provided no evidence contrasting their previous "prominent product placement" with their current search ranking. (ITOMTE Gnomes, Dkt. 29-1, at 1–3 ("All our gnomes are with the original design by ITOMTE's Swedish artists")). Indeed, 95% of Plaintiffs' customer reviews have been positive over the last 12 months. (*See* Customer Satisfaction, Dkt. 29-1, at 1). Without more, Plaintiffs' allegation of reputational damage is insufficient to support a finding of irreparable harm.

Third, Plaintiffs allege that their inability to sell Tomte Toys on Amazon "*may* result in staff layoffs or even insolvency." (Mot. Prelim. Inj., Dkt. 4, at 9–10) (emphasis added). At the hearing, Luo testified that if Plaintiffs could not continue their business, future staff layoffs or insolvency

---

[5] While there is an exception "to the general rule that the availability of monetary damages negates irreparable harm, notably in cases where a fraudulent transfer is afoot," that exception does not apply here. *DGG Grp., LLC v. Lockhart Fine Foods, LLC*, No. 1:20-CV-330-RP, 2020 WL 1879226, at *3 (W.D. Tex. Apr. 15, 2020) (citing *Janvey*, 647 F.3d at 600).

*might* very well happen. (Prelim. Inj. Hr'g. Dkt. 27). When asked if he could provide evidence of imminent insolvency, Luo admitted he could not. (*Id.*). Indeed, Luo conceded that Plaintiffs were still selling gnomes on Amazon through a different storefront. (ITOMTE Gnomes, Dkt. 29-1, at 1–3). And though Luo testified that these gnomes have generated less revenue than the delisted Tomte Toy, Plaintiffs provided no evidence that the difference between these two revenue figures made insolvency likely.[6] (Prelim. Inj. Hr'g., Dkt. 27). The possibility of irreparable injury is insufficient—Plaintiffs must establish that immediate irreparable injury is likely. *See Winter*, 555 U.S. at 22. Plaintiffs have not carried that burden.

Finally, the Court is not persuaded that it could fashion injunctive relief in this case that would accomplish more than Mironova has already voluntarily done. Mironova has sent retraction emails to Amazon requesting the reinstatement of Plaintiffs' store and product listings, and she has not filed any additional infringement complaints. (*See* Mot. Prelim. Inj., Dkt. 4, at 2 (requesting that the Court enjoin Mironova to take these very actions)). And Plaintiffs concede that "[t]o [their] knowledge, Defendants have ceased selling products that compete with the Plaintiffs' Tomte Toy." (*Id.* at 10). It is unclear what more the Court could enjoin Mironova to do.

As for Plaintiffs' request that the Court "compel [Mironova] to retract her complaints *to Amazon's satisfaction* and expedite the reopening of Mr. Luo's business," Amazon is not a party to this lawsuit, and even if it were, Amazon might very well have reasons beyond Mironova's infringement complaints for delisting Plaintiffs' gnome products, including Plaintiffs' alleged fake review scheme. (Reply, Dkt. 16, at 5; Resp., Dkt. 11, at 6; *see also* Fake Review Emails, Dkt. 29-1, at 11–22

---

[6] Moreover, the difference between those two revenue figures is readily quantifiable and therefore reparable by monetary damages. *Janvey*, 647 F.3d at 600 ("In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages.").

(illustrating that Plaintiffs bribed Amazon customers with free gnomes in exchange for negative reviews about Defendants' gnomes)).

Because Plaintiffs have not shown they will suffer immediate irreparable injury before the Court adjudicates the merits of this dispute, the Court need not reach the remaining preliminary injunction factors.

### III. CONCLUSION

For the reasons discussed, **IT IS ORDERED** that Plaintiffs' motion for a preliminary injunction, (Dkt. 4), is **DENIED**.

**SIGNED** on September 2, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE